UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JUL 2 0 2005 ★

BROOKLYN OFFICE

ORIGINAL
D&F
C/M

------------------------------------------------x

CHARLES HEATH

          Plaintiff,

   -against-

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.

------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-04-2926(FB)

*Appearances:*
*For the Plaintiff:*
CHARLES E. BINDER, ESQ.
215 Park Avenue South, 6th Floor
New York, New York 10003

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: Orelia Merchant
Assistant United States Attorney
One Pierrepont Plaza
Brooklyn, New York 11201

**BLOCK, District Judge:**

       Plaintiff, Charles Heath ("Heath"), seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the ALJ erred by failing to adequately explain the weight accorded to the opinion of Heath's treating physician, the case is remanded for further proceedings.

1

I.

According to the evidence in the administrative record, Heath worked as a school bus painter from 1989 to 1994. In 1993, he injured his back at work when he fell off a ladder, and as a result stopped working the following year. After an unsuccessful attempt to return to work as a truck driver in 1996, Heath filed an application for DIB and SSI. Following the denial of his applications, Heath requested a hearing before an ALJ. That hearing took place in September 1998. In a decision rendered on October 30, 1998, the ALJ found that Heath was not disabled within the meaning of the Social Security Act, and the Appeals Council subsequently denied his request for review. Heath sought review of the Commissioner's decision from the Court. By Stipulation and Order of Remand dated February 6, 2001, the Court remanded to the Commissioner for further proceedings. A supplemental hearing was held on April 3, 2002.

In addition to Heath's testimony, evidence presented at the supplemental hearing consisted of the medical records and opinions of Dr. Robert Donadt, Heath's treating orthopedist; the medical records of Dr. Weissman, a sports medicine and rehabilitation specialist whom Heath consulted in 1995; the evaluation of Dr. Mohammed Khattack, the government's consultative examiner; the residual functional capacity ("RFC") assessments of two state disability analysts; the testimony of Dr. Richard Goodman, the government's medical expert; and the testimony of Andrew Pasternak, a vocational expert. The administrative record also contains the opinion of Dr. Robert Reiss, a board-certified orthopedist who testified as the government's medical expert at the September 1998

hearing.

## A. Medical History and Opinions

### 1. Opinion of Heath's Treating Physician

Dr. Donadt treated Heath from November 1994 through September 2001. Based on an MRI dated June 2, 1994, Dr. Donadt diagnosed a lumbosacral sprain with disc herniation and degeneration and bilateral upper leg radiculitis. Dr. Donadt's diagnosis remained essentially unchanged throughout the course of Heath's treatment, and his medical records reflect Heath's complaints of pain and tenderness in the lower back and upper legs, a decreased range of spinal motion, and some weakness and decreased sensation in the right foot. Dr. Donadt advised physical therapy and use of a corset when necessary, and prescribed Motrin, Tylenol #3, and Daypro for Heath's pain. Heath inquired about the possibility of surgery but Dr. Donadt recommended that an epidural steroid be tried before resorting to an invasive procedure. Heath was apparently unable to receive authorization from workers' compensation for either the surgery or steroid injections.

In 1998, Dr. Donadt assessed Heath's residual functional capacity ("RFC").[1] Dr. Donadt opined that due to Heath's back pain and the attendant restrictions on his range of motion, Heath was only able to occasionally lift/carry up to five pounds, stand/walk for 1-2 hours, and sit 2-3 hours total in an eight-hour workday; he was also

---

[1] The regulations define residual functional capacity as the "most [a claimant] can do in a work setting," despite that individual's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1).

3

unable to climb, stoop, kneel, balance, crouch, or crawl, and was limited in his ability to reach, handle, and push/pull. In a Multiple Impairments questionnaire dated March 22, 2002, Dr. Donadt opined that Heath was only able to sit for two hours and stand/walk for two hours in an eight-hour workday, and occasionally lift or carry up to ten pounds. At various times during the course of Heath's treatment, Dr. Donadt opined that Heath had a "permanent partial disability," was "totally disabled from his previous job," and had been "unable to return to his previous job or any other job."

**2. Opinions of Examining and Consulting Physicians**

The reports of the Commissioner's examining and consulting physicians–the two state disability analysts; Dr. Khattack, the government's consultative examiner; and Doctors Reiss and Goodman, the government's medical experts–generally confirmed Dr. Donadt's diagnosis of disc herniation and degeneration, and noted pain, tenderness, and a decreased range of motion in Heath's lower back; however, their RFC assessments differed significantly from Dr. Donadt's.

The state disability analysts concluded that Heath could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, could sit, stand, and/or walk for 6 hours in an 8-hour workday and push and pull without restriction. There were no other limitations noted and the analysts opined that all reports in Heath's file supported a light residual functional capacity.

Dr. Khattack observed that Heath ambulated without assistance, had a steady gait, was able to sit and stand comfortably, and got on and off the exam table without

4

assistance. Dr. Khattack noted that there were no sensory or motor deficits of the spine, and although the lumbar spine had some arthritic changes, the disc spaces were relatively well maintained. Dr. Khattack concluded that Heath could "sit, stand, walk, bend, lift and carry, push and pull, travel and handle small objects," and that he "did not need any assistive device for ambulation."

Dr. Reiss testified that Heath's MRI documented disc and central cord herniation, but that it showed no impingement of nerve endings; therefore, this condition would not produce pain. Dr. Reiss opined that Heath could sit for six hours, stand and walk for six hours, and lift and carry ten pounds regularly and 20 pounds occasionally. Dr. Reiss said he disagreed with Dr. Donadt's RFC assessment because the medical reports showed no neurological loss or fractures.

Finally, Dr. Goodman testified that Heath's testimony and medical records documented that Heath had pain, muscle spasms, and a limited range of motion in his spine, but that Heath's medical records showed no evidence of nerve impingement; therefore, Dr. Goodman could not explain what might be causing the disabling pain of which Heath complained. Dr. Goodman disagreed with Dr. Donadt's opinion regarding Heath's RFC because he stated that the only medical evidence in the record to support Dr. Donadt's assessment was the MRI report, which Dr. Goodman opined would only limit his functional capacity to "less than maximum."

### 3. Heath's Testimony

Heath testified that he was able to take public transportation although he was in pain, could sit for a period of 30 minutes at the most, and could stand in a fixed position for 15 or 20 minutes. Heath estimated that the most weight he was able to lift and/or carry was about five pounds, and said that his aunt did all the household chores and cooking. Heath testified that during the day he would watch TV, changing positions when his back became stiff from sitting. He also read the papers, and tried to exercise, although he had trouble walking. Heath stated that his pain often woke him up during the night.

### B. ALJ's Determination

The ALJ rendered his decision on May 3, 2002, applying the five-step procedure for evaluating disability claims as required by the relevant regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. As the Supreme Court has explained:

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a 'substantial gainful activity.' At step two, the SSA will find non-disability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.' At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called 'vocational factors' (the claimant's age, education, and past work experience), and

> to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (internal quotations and citations omitted).

In regard to the first step, the ALJ found that Heath had not engaged in substantial gainful activity since 1996. At the second step, the ALJ found that Heath's impairment was "severe," but determined at the third step that it did not meet or equal one of the impairments listed in Appendix 1 of the regulations. Although the ALJ discredited Heath's testimony regarding the extent of his symptoms and functional limitations as inconsistent with the record evidence, and further found that the opinion of his treating physician was not entitled to controlling weight, he agreed with Heath at the fourth step that his impairment prevented him from performing his past work. At step five, however, the ALJ found that Heath retained the residual functional capacity to perform a full range of sedentary work; accordingly, the relevant guidelines directed a finding of "not disabled."

The Appeals Council denied Heath's request for review on May 27, 2004, thereby rendering final the Commissioner's decision to deny benefits.

## II.

### A. Standard of Review

The Court, in reviewing the Commissioner's decision, must evaluate whether it "is supported by 'substantial evidence' in the record as a whole." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)). In her decision, the ALJ must ensure that the crucial factors in any determination are "set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Heath argues that the Commissioner's determination that he retained the RFC to perform sedentary work is not supported by substantial evidence because (1) the ALJ erred in finding that Heath's testimony was not credible, and (2) the ALJ failed to give controlling weight to the opinion of Dr. Donadt, Heath's treating physician. In the alternative, Heath argues that the ALJ committed legal error in failing to give good reasons for the weight accorded to Dr. Donadt's opinion. For the reasons set forth below, the Court finds that the ALJ's credibility determination was supported by substantial evidence, and that the ALJ was not required to give controlling weight to the opinion of Dr. Donadt. However, the Court agrees with Heath's alternative argument.

### B. ALJ's Credibillity Determination

Although Heath argues that the ALJ erred in finding that his testimony regarding the extent of his symptoms and limitations was not credible, this argument is without merit. "As a fact finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence." *Peitrunti v. Director, Office of Workers' Compensation*, 119 F.3d 1035, 1042 (2d Cir. 1997) (citing *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 705 (2d Cir. 1980)). *See also Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1982) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").

"If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dept. of Health and Human Services*, 728 F.2d 588 (2d Cir. 1984) (citing *McLaughlin*, 612 F.2d at 704).

In determining that Heath's complaints of disabling pain were not credible, the ALJ properly assessed Heath's testimony in light of the factors discussed in S.S.R. 96-7P, 1996 WL 374186 at *2-3 (S.S.A. 1996). There is substantial evidence in the record as a whole to support the ALJ's credibility determination. Both Dr. Reiss and Dr. Goodman opined that the objective medical evidence did not support Heath's complaints of severe pain. As required by the relevant regulations, the ALJ also considered Heath's daily activities and the conservative treatment prescribed for his symptoms, and found them to be inconsistent with Heath's testimony regarding the extent of his pain. *See* S.S.R. 96-7P, 1996 WL 374186 at *3. The ALJ's determination that Heath's testimony was not entirely credible is further supported by the RFC assessments of the state disability analysts, as well as Dr. Khattack's observations regarding Heath's capabilities. The ALJ chose to credit these conclusions and discount Heath's complaints of disabling pain. On the record as a whole, this finding must be upheld. *See Aponte*, 728 F.2d at 591-92 (upholding ALJ's decision to discredit claimant's testimony where the reports of two physicians found that the medical evidence did not support claimant's claims of disabling pain, and testimony also suggested that claimant could do some light cooking).

## B. The Treating Physician Rule

In determining whether the ALJ's decision is supported by substantial evidence, the Court must assess whether the ALJ properly applied the treating physician rule. The ALJ is required to give controlling weight to the opinion of a claimant's treating physician, provided that the "treating source's opinion on the issue of the nature and severity of [the] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case records." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (quoting 20 C.F.R. § 404.1527(d)(2). Where the opinion of a treating physician is not given controlling weight, the ALJ is required to explain the weight given to each medical opinion, and to provide "good reasons" for the weight accorded to the treating physician's opinion. *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Heath argues that the ALJ erred in failing to give controlling weight to the opinion of Dr. Donadt, his treating orthopedist, because Dr. Donadt's opinion was supported by acceptable laboratory and clinical diagnostic techniques and was not inconsistent with substantial medical evidence of record. (Pl. Mem. 19) The Court disagrees. As discussed above, all physicians generally concurred with Dr. Donadt's diagnosis of disc herniation and degeneration as the source of Heath's symptoms. The examining and consulting physicians disagreed, however, with Dr. Donadt's assessment of Heath's RFC. Because Dr. Donadt's opinion regarding the extent of Heath's physical impairment was inconsistent with substantial evidence of record, including the opinions

10

of two state disability analysts, the consultative examiner, and the government's two medical experts, the ALJ properly declined to give controlling weight to Dr. Donadt's opinion regarding Heath's RFC.[2]

Although the opinion of Dr. Donadt was not controlling, the ALJ was nonetheless required to explain what weight, if any, he ascribed to the opinion. The regulations provide that where the opinion of a treating physician is not given controlling weight, the ALJ must consider a number of factors "to determine how much weight to give the opinion." *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors are: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id*. After determining that Dr. Donadt's opinion was not entitled to controlling weight, the ALJ failed to apply these factors in

---

[2] Heath also argues that in rejecting Dr. Donadt's finding of disability, the ALJ impermissibly substituted his medical opinion for that of a physician. (Pl. Mem. 21) The argument is without merit. Rather than substituting his own medical opinion for that of Dr. Donadt's, the ALJ simply chose to credit the opinions of two medical experts who found no medical evidence to support the pain of which Heath complained, and whose opinions were therefore at odds with Dr. Donadt's. This was entirely proper. It is for the Commissioner, and not the reviewing court, to weigh the conflicting evidence in the record. *See Schaal*, 134 F.3d at 504 (citing *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996)).

assessing the opinion's weight; accordingly, remand is necessary.[3] *See Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").[4]

---

[3]In remanding, the Court also notes that where the treating physician's opinion is not given controlling weight, the regulations direct the ALJ to evaluate all medical opinions of record–not merely the opinion of the treating source–in light of the factors discussed in *Halloran*, 362 F.3d at 32. *See* 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

[4]Heath argues that a proper assessment of the weight to be accorded to his treating physician's opinion would have resulted in the opinion being given greater weight, and that because the record lacks substantial evidence to support the Commissioner's finding that Heath was capable of sedentary work, the Court should remand the case only for consideration of benefits. (Pl. Mem. 20, 25) Where application of the correct legal standard could lead to only one conclusion, a reviewing court may remand for payment of benefits. *See Schaal*, 134 F.3d at 504 (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). On this record, however, the Court cannot say with certainty what weight should be assigned to the opinion of Heath's treating physician. It is for the Commissioner, and not the reviewing court, to weigh the conflicting evidence in the record. *See Schaal*, 134 F.3d at 504 (citing *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996).

## III.

The case is remanded to the ALJ for further proceedings in accordance with this Memorandum and Order.


**SO ORDERED.**

_____
FREDERIC BLOCK
United States District Judge

Brooklyn, New York
July 20, 2005